HOME LIFE & ACCIDENT CO. v. CORSEY.
(No. 7633.)

(Court of Civil Appeals of Texas. Galveston. Dec. 5, 1918. On Appellee's Motion for Rehearing, June 18, 1919. On Appellant's Motion for Rehearing, Oct. 14, 1919.)

On Appellee's Motion for Rehearing.

1. MASTER AND SERVANT ☞405(6)—WORKMEN'S COMPENSATION ACT; FINDING OF TOTAL DISABILITY SUSTAINED BY EVIDENCE.

Evidence *held* sufficient to support a finding that injured servant, claiming compensation under Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), suffered total incapacity for the period stated in the finding.

2. MASTER AND SERVANT ☞385(5)—WORKMEN'S COMPENSATION ACT; "TOTAL INCAPACITY FOR WORK" DEFINED.

The phrase "total incapacity for work," in the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), does not imply an absolute disability to perform any kind of labor, and a person disqualified from performing the usual tasks of a workman in such a way as to render him unable to procure and retain employment is ordinarily regarded as being totally incapacitated.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Total Incapacity.]

3. STATUTES ☞226 — CONSTRUCTION OF WORKMEN'S COMPENSATION ACT.

Since the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz) is largely copied from the Massachusetts Act, it should receive the same construction as that given the latter act by the courts of that state.

4. MASTER AND SERVANT ☞382—WORKMEN'S COMPENSATION ACT; EFFECT OF RECEIVING COMPENSATION FOR SUBSEQUENT INJURY.

The fact that an injured employé may have obtained compensation for total incapacity from another master for a subsequent injury to which he was not entitled cannot defeat his right to recover compensation for total disability in an action against the insurer of the first master, the fraud, if any, being on the second, and not the first master.

5. MASTER AND SERVANT ☞411—WORKMEN'S COMPENSATION ACT; RECOVERY NOT TO EXCEED AMOUNT CLAIMED.

In an action by an injured servant against the insurer of his master, the servant is not entitled to recover compensation at a greater rate per week than that prayed for in the petition.

Appeal from Harris County Court; W. E. Monteith, Judge.

Suit by P. J. Corsey against the Home Life & Accident Company. Judgment for plaintiff, and defendant appeals. Reformed and affirmed.

Andrews, Streetman, Burns & Logue, of Houston, for appellant.

A. B. Wilson, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee to recover the sum of $1,000 alleged to be compensation due him by appellant under the Workmen's Compensation Act of this state (Acts 1913, c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]).

The petition alleges in substance that plaintiff was injured on April 29, 1916, while working for the Kirby Lumber Company at a weekly wage of $10.50; that defendant was the insurer of said lumber company under the Texas Workmen's Compensation Act; that the Industrial Accident Board had investigated his claim for compensation, and had decided that he was entitled to compensation at the rate of $5 per week, beginning May 7, 1916; that plaintiff was totally and permanently disabled by reason of his said injuries, and was entitled, under the provisions of the Workmen's Compensation Act, to receive compensation from defendant at the rate of $5 per week for a total of 300 weeks. The prayer was for recovery of $1,000.

The cause was submitted to a jury in the court below upon special issues, and upon the verdict returned judgment was rendered in favor of plaintiff for the sum of $479.70. The jury found, in response to the issues presented to them by the charge of the court, that as a result of injuries received by him while engaged in performing the duties of his employment by the Kirby Lumber Company on April 29, 1916, plaintiff was incapacitated for work for a period of 537 days, and that for 504 of said days plaintiff's incapacity was total, and for the remaining 33 days was only partial. Under appropriate assignments of error each of these findings is assailed on the ground that it is without any evidence to support it.

Plaintiff, in substance, testified that on April 29, 1916, while he and other employés of the Kirby Lumber Company were engaged in moving and stacking lumber, one of his coemployés let a piece of lumber he was lifting slip and fall from the lumber hook with which he was lifting it, and such piece of lumber, which was about 14 inches wide, 2 inches thick, and about 18 or 20 feet long, struck plaintiff on the foot, and so injured him as to prevent his securing any permanent work since said injury was received.

Two other witnesses for plaintiff testified that they were present and saw the lumber fall and strike plaintiff's foot, and both testified that this injury to plaintiff caused him to stop work, and that his foot was swollen for some time thereafter.

On cross-examination plaintiff testified

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

that in the latter part of July, 1916, he went from Silsbee, where he was then living, to Beaumont, and obtained employment with the creosote works for one day, or 10 or 12 hours. He quit this job, and went to work for the Beaumont Lumber Company handling lumber on trimmers. His work for this company only lasted 2 days. In August, 1916, he went to Houston, and there obtained employment with Horton & Horton, who were constructing a sewer for the city. He worked for these contractors about 2 weeks. The first day of his work there he cut dirt down in the sewer. He was then told by his employer that he was not good enough for that work, and, to use his language, he was then given "a little job, piddling around keeping wood in the furnaces." On December 16, 1916, he obtained employment from the Armour Fertilizer Company, for whom he worked one day. While working for this company he was again injured by a pile of cotton seed cake falling on him, and he has done no work since.

A witness for the defendant testified, and the testimony is uncontradicted, that plaintiff worked for the Westheimer Transfer Company at Houston for about two or three weeks in November, 1916, and was paid a wage of $1.50 per day.

The injury received by plaintiff at the Armour Company consisted of a broken hip bone. For this injury he made claim for compensation against the insurer of the Armour Company, and was allowed compensation at the rate of $5.77 per week. He testified that this compensation was paid him from December, 1916, to April, 1917, at which time he made a lump sum settlement with the insurance company. He said he did not remember what amount he received in this settlement, and that he did not "think it had anything to do with this case." The 537 days that the jury found the plaintiff was incapacitated covers the period from the 8th day after the accident, when his right to receive compensation began under the Workmen's Compensation Act, up to the date of the trial in the court below.

We think this evidence was sufficient to sustain a finding that plaintiff received injuries as claimed by him on April 29, 1916, and as a result of such injuries he was partially incapacitated for 33 days, and probably totally incapacitated for some days, but the evidence is wholly insufficient to sustain the finding that as a result of such injuries he was totally incapacitated for 504 days. The period of partial incapacity found by the jury was evidently the 33 days which the evidence shows plaintiff had worked subsequent to his injury. Plaintiff testified that he only received $35 for this 33 days' work, and that because of his inability to properly perform the work he could not keep his job. We think this testimony would authorize a

216 S.W.—30

recovery by plaintiff for compensation for partial incapacity for the 33 days, and probably for the whole period from the 8th day after his injury up to the 16th day of December, 1918. But as before stated, we find no evidence to sustain the finding that he was totally incapacitated for 504 days, or for any number of days. All that the evidence shows is that his injured foot has caused, and still causes, him pain, lessens his capacity to work, and prevents him from securing permanent or continuous employment. He described his condition as follows:

"I worked for the Beaumont Lumber Company two days, I think it was, and he told me he could give me a permanent job if I did the work. He looked at me and asked me what ailed me, and I told him about that little accident at Kirby's, and he told me if I could stand up and do the work he would give me a steady job. The reason I can't work is that that leg and foot simply fail me, and the misery has gone all up in that leg and rib, and it pains at times, just pains; most of the pain is in the instep; the whole foot swells up and it pains me all over.

"I have not earned more than $35 since May 7, 1916. Yes; no more than $35 actually paid me for work. The reason I haven't is on the condition I haven't been able to hold a job since that time. I have been putting forth my efforts trying to work, but have not been able to secure a job long enough to show I was able to do the work. I am unable to stand up and do the work that I could demand before. It affects my foot when I stand on it. It pains and sometimes swells up on me."

The witness Jones testified:

"He (Corsey) worked there (Westheimer Transfer Company) in the year 1916, in November. He worked from about the 25th or 26th of November is the first day he went to work. He quit between that time and before the first of the year. He was gone before Christmas; was there about three weeks. We paid him 15 cents an hour; we paid him $1.50 for the work all day; that is, when he was working on the wagon he made on an average of $1.50 per day; he was on the wagon only about two weeks; he stayed around the office to help. He did this and that, whenever he could work, and by that he did not make enough to justify him staying there, I don't suppose, and he disappeared and didn't come back. That week we paid him by the hour—15 cents. If he worked only one hour a day he would be paid 15 cents. If he worked 10 hours he would be paid $1.50, etc. He seemed to be a willing worker. We never had any trouble as to his being courteous or anything like that; of course, he was not in a position to do otherwise. Yes; he was obedient. Under his condition he was not a desirable employé. He couldn't do the work on the wagon. He could hardly get on the wagon when he was on the ground. No; he couldn't make enough to feed himself after he went to work in the office, around the place, at little off jobs," etc.

As before shown, he did work for 33 days bringing the period of time from July, 1916, to December 16, 1916, and received

some compensation therefor. These 33 days covered periods from 1 to 15 days' duration, with intervals of several weeks or months intervening, and there is nothing in the evidence to show that his condition during these intervals was different from what it was on the days he worked. The undisputed evidence shows that on December 16th he received a second injury, which caused total incapacity, and that he has received compensation under the Workmen's Compensation Act for such incapacity. If he was totally incapacitated by the injury received on April 29th, and was suffering from such total incapacity on December 16th, when he received his second injury, the total incapacity which may have existed subsequent to that time might be chargeable to one or the other of said injuries, or partly to one and partly to the other. He made claim for compensation for total incapacity caused by the injuries received on December 16th, and has received the monthly compensation provided by the statute for the period from December, 1916, to April, 1917, and for such time thereafter as was covered by the amount received in his lump settlement, which amount is not shown. If he was entitled to the compensation received by him from the insurer of the Armour Company for total incapacity caused by the injuries received on December 16th, it is manifest that he was not totally incapacitated prior to receiving such injury.

To permit him to recover from appellant compensation for total incapacity caused by the injuries received on April 29th and existing during the time he was receiving such compensation for injuries received December 16th would be to sanction the perpetration of a fraud in one or the other case. We are, however, not called upon by the evidence to dispose of the case upon this ground; there being no evidence that he was totally incapacitated as a result of the injury of April 29th.

If any error is shown by any of the other assignments presented in appellant's brief, it is not such as is likely to occur upon another trial, and therefore need not be discussed.

For the reason before indicated the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.

## On Appellee's Motion for Rehearing.

[1, 2] Upon re-examination of the record, and consideration of authorities cited in appellee's motion for rehearing, we have reached the conclusion that we erred in our former opinion in this case in holding that there was no evidence to support the finding of the jury that appellee suffered total incapacity, as a result of the injuries complained of in this suit, for the number of days found by the jury. After stating in our former opinion that for 33 days during the period of time from July 1, 1916, to December 16, 1916, the plaintiff was only partially incapacitated, and performed work for which he received wages, we say that—

"These 33 days covered periods of from 1 to 15 days' duration, with intervals of several weeks or months intervening, and there is nothing in the evidence to show that his condition during these intervals was different from what it was on the days he worked."

We do not now think that we were justified in concluding that because plaintiff was able to perform some kind of work during these 33 days the finding of the jury that he was totally incapacitated during the remainder of the period mentioned could not be sustained. The plaintiff testified:

"This injury hurt me so that I have not been able to demand any salary since. I have attempted to work, but every job that I got I lost because the employers would say that my disabilities were of such a nature that my services were not of use to them."

There was other testimony corroborative of this statement of the plaintiff. It seems to be settled by the authorities that—

"The phrase 'total incapacity for work,' as used in Workmen's Compensation Act, does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as 'totally incapacitated.'" Moore v. Peet Bros., 99 Kan. 443, 162 Pac. 295.

The same general rule is announced in the following cases: In re Lacione, 227 Mass. 269, 116 N. E. 485; In re Sullivan, 218 Mass. 141, 105 N. E. 463, L. R. A. 1916A, 378; Deprey's Case, 219 Mass. 189, 106 N. E. 686.

[3] Our employé's compensation act is largely copied from the Massachusetts Act, and should receive the same construction as that given the latter act by the courts of that state. In the Sullivan Case, supra, the court, referring to some of the cases above cited, say:

"In our opinion these decisions are correct in principle. The object of our statute was to give compensation for a total or partial loss of the capacity to earn wages. Gillen's Case, 215 Mass. 96, 99, 102 N. E. 346 [L. R. A. 1916A, 371]. If, as in this case, the injured employé by reason of his injury is unable, in spite of diligent efforts, to obtain employment, it would be an abuse of language to say that he was still able to earn money, that he still had a capacity for work, even though his physical powers might be such as to enable him to do some kinds of work if practically the labor market were not thus closed to him. He has become unable to earn anything; he has lost his capacity to work for wages and to support himself, not by reason of any change in market conditions, but because of a defect which is personal to himself, and

which is the direct result of the injury that he has sustained. He is deprived of the benefit which the statute promises to him if he is told that because he could do some work if he could get it, he is not under an incapacity for work, although by reason of his injury he can obtain no opportunity to work. But we said in Donovan's Case, 217 Mass. 76, 104 N. E. 431, Ann. Cas. 1915C, 778, 4 N. C. C. A. 549, that the statute was to be construed broadly for the purpose of carrying out its manifest purpose."

[4] We further think we erred in our former holding that plaintiff could not recover for total disability for the time allowed him by the jury because of the fact that he had for a portion of said time received compensation for total incapacity from a different insurance company, and for an injury sustained subsequent to the injury of which he complains in this suit. The fact that he may have obtained compensation for the subsequent injury to which he was not entitled cannot defeat his right to recover in this suit.

[5] There is, however, an error in the judgment in this case which requires the reformation of the judgment. The jury found that plaintiff was totally incapacitated for a period of 504 days or 72 weeks. On this finding the court rendered judgment for plaintiff, allowing him compensation for said period at the rate of $6.30 per week. This judgment is for $1.30 per week more than is claimed in plaintiff's petition. The allegations of the petition setting out the amount claimed by plaintiff are as follows:

"That the Industrial Accident Board for the state of Texas heard and adjudicated the plaintiff's rights and compensation as against the defendant, and found in favor of plaintiff, finding that he was entitled to the compensation of $5 per week, beginning on the 7th day of May, 1916, on account of the injuries sustained by the plaintiff while engaged by the Kirby Lumber Company.

"That since sustaining the said injury, as alleged by plaintiff and found by the Industrial Accident Board, plaintiff's leg and foot have continued to pain him, and he is unable to work, being unable to walk without crutches, and plaintiff alleges that he is entitled to have and receive of the defendant the sum of $5 per week for a period of 300 weeks, as plaintiff will be unable to work and earn a living, as he was prior to sustaining said injury, and has been totally disabled by reason of sustaining said injuries as hereinbefore alleged.

"Wherefore, plaintiff prays that the defendant be cited, and that upon a hearing hereof plaintiff recover of defendant the sum of $1,000, at the rate of $5 per week from and after the 8th day after said injury, and for all such other general and special relief as he may be entitled to, and for costs of court."

It goes without saying that the plaintiff cannot recover compensation at a greater rate per week than that alleged in his petition.

It follows from what we have said that the motion for rehearing should be granted, judgment of the court below reformed, as above indicated, and affirmed; and it has been so ordered.

Reformed and affirmed.

On Appellant's Motion for Rehearing.

In a motion for rehearing presented by appellant our attention has been called to an error apparent upon the face of the record which requires a further reformation of the judgment of the trial court.

In answer to special issue No. 5 the jury found that the difference between appellee's wages before and after his injury during the 33 days of his partial incapacity was $1.50 per week. Under article 5246m of Vernon's Sayles' Civil Statutes he was entitled to recover 60 per cent. of this difference, which amounts to 90 cents per week. Thirty-three days is 4⁵/₇ weeks, and at 90 cents a week the compensation to which appellee is entitled is $4.24. The portion of the judgment which allows appellee $26.10 compensation for this period is clearly wrong, and must be reformed as above indicated.

The motion for rehearing has been given due consideration, and, except in the matter of this obvious error we think it should be refused; and it has been so ordered.