## EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited v. WILLIAMS et al. * (No. 8928.)

Court of Civil Appeals of Texas. Galveston.
Feb. 25, 1927.

Rehearing Denied March 17, 1927.

1. Master and servant ☞385(5)—"Total incapacity" means disability to perform usual task of employment (Workmen's Compensation Act [Vernon's Ann. Civ. St. 1925, arts. 8306–8309]).

"Total incapacity for work," as used in Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, arts. 8306–8309), does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual task of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Total Incapacity.]

2. Master and servant ☞405(6)—Evidence held sufficient to support finding of total permanent incapacity.

In action to set aside an award of compensation, evidence *held* sufficient to go to jury and support finding of total permanent incapacity of injured employee.

3. Appeal and error ☞930(1), 1001(1)—On appeal, evidence must be viewed most favorably to jury's findings, which cannot be disturbed, if supported by evidence so considered.

Evidence on appeal must be viewed in a light most favorable to the findings of the jury, and if, when so viewed, it supports such findings, the appellate court is without authority to substitute its findings for those of the jury.

4. Master and servant ☞385(18)—Insurance carrier held not entitled to invoke statute requiring employee to submit to operation, without showing it had sought operation (Rev. St. 1925, art. 8306, pt. 1, § 12e).

Insurance carrier, appealing from judgment for lump compensation for total permanent incapacity, *held* not entitled to invoke Rev. St.

1925, art. 8306, pt. 1, § 12e, requiring employee to submit to operation, if likely to improve his condition, in the absence of any showing that it had previously sought to have such operation performed.

**5. Master and servant ⟨☞⟩399—Refusal to direct X-ray examination of employee at trial held not error.**

In action to set aside an award of compensation, refusal to permit plaintiff insurance carrier to have an X-ray examination made of defendant employee to determine the nature and extent of his injury at the time of trial *held* not error, in view of prior examinations and pictures taken.

**6. Evidence ⟨☞⟩474(13)—Employee's testimony that he had not been able to do labor or do things he had done held not objectionable as conclusion of witness.**

In insurance carrier's action to set aside award of compensation, testimony of employee that he had not been able to perform any manual labor since his injury, and that he had not been able to do what things he had done, *held* not objectionable as conclusion of the witness.

**7. Master and servant ⟨☞⟩417(5)—Improper argument in workmen's compensation suit held not ground for reversal, in absence of objection or request for instruction to disregard.**

In insurance carrier's action to set aside award of compensation, alleged improper argument that plaintiff was refusing compensation in lump sum out of pure meanness *held* not ground for reversal, in the absence of any objection at the time the argument was made or any request for an instruction to disregard it.

Appeal from District Court, Galveston County; J. C. Canty, Judge.

Action by the Employers' Liability Assurance Corporation, Limited, against J. H. Williams and others, wherein defendants answered by way of cross-action. From judgment for defendants, plaintiff appeals. Affirmed.

Vinson, Elkins, Sweeton & Weems, of Houston, for appellant.

Morris, Sewell & Morris, of Houston, for appellees.

LANE, J. On and prior to the 11th day of September, 1924, J. H. Williams was in the employ of the American Construction Company, a subscriber under the Texas Employers' Liability Act (Vernon's Ann. Civ. St. 1925, arts. 8306–8309). Prior to said date the Employers' Liability Assurance Corporation, Limited, issued to the American Construction Company a policy of insurance, conditioned that it would pay such compensation to the employees of said company as is provided by the liability or Workmen's Compensation Act of the state of Texas, during the continuance of said policy. Such policy was in force and effect on said 11th day of

September, 1924. On the date mentioned J. H. Williams, an employee of the construction company, suffered an injury while in performance of his duties as such employee. After suffering such injury, Williams was paid by the plaintiff 32 weeks' compensation at $20 per week. Thereafter Williams filed his claim for compensation with the Industrial Accident Board of the state, praying for a lump sum award.

On the 17th day of June, 1925, said board rendered its decision, awarding to Williams upon his claim compensation as provided by the Workmen's Compensation Act, against the assurance corporation.

In presenting his claim before the Industrial Accident Board, Williams was represented by N. B. Morris, J. B. Sewell, and Larry W. Morris under the firm name of Morris, Sewell & Morris, who were awarded by said board an interest in the award made upon said claim.

In due time, and in manner and form as required by law, and after due notice to the Accident Board, the Employers' Liability Assurance Corporation, frequently referred to herein as assurance corporation, brought this suit in the district court of Galveston county to set aside the award made by the accident board to Williams and his representatives, all of whom are made defendants in this cause, and to contest his right to recover against it any sum whatever.

On the 23d day of September, 1925, the defendants answered by way of cross-action against the plaintiff, as compensation insurers of the construction company, by which he seeks a recovery for total and permanent disability in a lump sum payment on account of injuries alleged to have been sustained by Williams as an employee of the construction company at Texas City on the 11th day of September, 1924, or in the alternative, for such weekly payments as he may be found entitled to receive.

To defendants' cross-action, the plaintiff filed answer, consisting of a general demurrer and general denial.

The case was tried before a jury upon special issues, together with explanations and definitions of legal terms as follows:

"Issue No. 1. Was the defendant Williams totally disabled as a proximate result of the fall he sustained about the 11th day of September, 1924. Answer 'Yes' or 'No.'

"In answering the above question, you will be governed by the following: The phrase 'total disability' as used in the Workmen's Compensation Act, does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated.

"Question No. 2. Will the injuries sustained by the said Williams in said fall be permanent? Answer 'Yes' or 'No.'

---

⟨☞⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Question No. 3. What do you find from the evidence was the average daily wage of the defendant Williams at the time and before he was injured? Answer, giving the number of dollars per day.

"Question No. 4. What do you find was the average daily wage of an employee of the same class, working substantially the whole of the year immediately preceding September 11, 1924, in a similar employment, in the same neighborhood? Answer, giving the number of dollars per day.

"Question No. 5. Do you find that a failure on the part of the insurance company to pay to the defendant Williams any compensation which he may recover in a lump sum will work a manifest hardship and injustice on said Williams? Answer 'Yes' or 'No.'

"If you have answered questions Nos. 1 and 2 'Yes,' then you need not answer the following questions, but return your verdict, but, if you have not so answered questions 1 and 2, then you will answer the following questions:

"If in answering questions Nos. 6 and 7 you find that the defendant Williams' disability has or will change from time to time, then in answering said questions you will state in your verdict what percentage of disability he will or has suffered from time to time, fixing the number of weeks and the percentage of disability for each respective period of weeks.

"Question No. 6. What percentage of disability did defendant Williams sustain by reason of said injury? Answer by giving the figures showing that percentage.

"If you have answered question No. 2 'No' (meaning that he was not permanently disabled), then answer the following:

"Question No. 7. How many weeks' disability do you find said injury produced?

"The burden of proof is on the defendant to establish the issues submitted by a preponderance of the evidence; and by a preponderance of the evidence is meant a greater weight or degree of credible testimony.

"You are the exclusive judges of the facts proven of the credibility of the witnesses, and of the weight to be given to the testimony, but the law you will receive from the court, as herein given you, and be governed thereby."

In answering the issues submitted, the jury found: (1) That J. H. Williams was totally disabled as a proximate result of the fall he sustained about the 11th day of September, 1924; (2) that the injuries so sustained will be permanent; (3) that the average daily wages of Williams at the time and before he was so injured was $8 per day; (4) that the average daily wages of an employee of the same class, working substantially the whole of the year, immediately preceding September 11, 1924, in similar employment in the same neighborhood, was $8 per day; and (5) that the failure on the part of the plaintiff, Employers' Liability Assurance Corporation, to pay Williams any compensation which he may recover in a lump sum would work a manifest hardship and injustice on him. Having made such findings in answer to issues Nos. 1, 2, 3, 4, and 5, the jury, in accordance with the in-

structions of the court, made no answers to issues Nos. 6 and 7.

Upon the findings of the jury and upon the evidence the court rendered judgment refusing the plaintiff, assurance corporation, the relief prayed for, and also rendered judgment decreeing that the award of the Industrial Accident Board made in the cause on the 17th day of June, 1925, be set aside, canceled, and held for naught, and that the defendant J. H. Williams, for his own use and benefit, and for the use and benefit of Morris, Sewell & Morris, a firm of lawyers composed of Ned B. Morris, J. B. Sewell, and Larry W. Morris, the attorneys of Williams, recover from the plaintiff, Employers' Liability Assurance Corporation, Limited, the sum of $6,032.15 in a lump sum, together with interest thereon from date of judgment at the rate of 6 per cent. per annum, and costs of suit. It was further decreed that the firm of Morris, Sewell & Morris shall be the owners of a one-third interest in said judgment. From the judgment so rendered the assurance corporation has appealed.

By its first, second, third, fourth, fifth, and sixth assignments appellant insists, substantially, that the court erred in rendering judgment for appellee Williams on his cross-action, same being based upon the answers of the jury to special issues Nos. 1 and 2, in that there is no evidence to support such answers to the effect that Williams sustained total and permanent disability by reason of the injuries of which he complained, but to the contrary, the undisputed evidence shows that he had been working regularly since May 11, 1925, up to the day of the trial, and that he has an earning capacity of $20 per week.

The grounds set forth by Williams in his cross-petition for a recovery of a lump sum settlement, and upon which he now insists that the judgment in his favor should be affirmed, are, substantially, that appellant had shut off and refused to pay him the $20 weekly compensation which it had been paying him on account of his injuries, and therefore he had been compelled to go in debt for borrowed money on which to live pending the trial of this suit; that he has a family dependent upon him; and that he has no means of support other than the compensation which he had theretofore received for his daily labor; and that it would work a manifest hardship and injustice on him, unless the plaintiff is required to pay in a lump sum all of the compensation due to him because of his injury.

It is shown that prior to his injury J. H. Williams was a strong, able-bodied, healthy man, able to do hard manual labor; that he was a skilled carpenter and painter, and had been working as a carpenter and painter for 18 to 20 years; that he had a high school education only; that he had no profession or calling other than that of carpenter and

painter; that prior to and at the time of his injury he was earning an average weekly wage of $46.15; that for 32 weeks from the time of his injury up to the 12th day of May, 1925, Williams was paid by appellant assurance corporation $20 per week; that on or about the date last mentioned Williams procured employment with one Charles Lauer, as a picture show operative, for which services he was paid $20 per week up to the time of the trial of this case, October 26, 1925. After appellant learned of such employment and payment, to wit, on or about the 12th day of May, 1925, it ceased to make further payments to appellee, claiming that his incapacity to perform his usual labors had been relieved. Thereafter Williams presented his claim to the Industrial Accident Board, and on the 17th day of June, 1925, said board made the award hereinbefore mentioned, which is being contested in this suit by appellant.

Appellee Williams testified that since his injury he had not been able to perform any manual labor nor any kind of labor; that because of his limited education he was unable to earn a living except by the performance of manual labor; that he was not able to do what he has done and was doing since he was injured; that since such injury he had done no kind of manual labor; that he tried to work, and did put up some gold leaf signs; that he had a job at the time of the trial with the Jewel Theater, as operator of the movie machine, which he had held since the 12th day of May, 1925; that he received for his services as such operator the sum of $20 per week; that as such operator he helped to inspect the films and run the machine; that in performing such services he could sit down four-fifths of the time; and that it is only necessary for him to stand just long enough to fade in on one picture; that in this theater they have two machines, and, when the picture on one machine is about to run out, it is necessary to fade in on the other and go back to take out the other reel, and put another in its place; that it takes from 12 to 15 minutes to run a reel and about 2 or 3 minutes to do the other necessary things. He testified that he could not live on $20 per week.

Witness Charles Lauer, owner of the Jewel Theater, testified that J. H. Williams applied to him three or four times for a job after his injury before he employed him; that, when Williams worked for him as an operative, he (witness) had to take the films down to the post office and ship them; that Williams complained of his back hurting him when he had to raise the films; that he gave Williams the job because of sympathy for him; that his employment of Williams was by the week only; that Williams does not do the work he should do, because he is unable to do so; that Williams also sweeps the floor of the theater; that his hours as operator are from 7 to 10 o'clock at night.

Dr. Denman testified that he made a complete examination of Williams on October 8, 1925, 18 days before the trial of the cause. Testifying as to the condition of Williams' hip joint, he stated that all manipulations met with resistance, and gave the patient considerable pain in his right hip and pelvis and small of the back; that he made a diagnosis, and in his opinion Williams suffered an extra capsular fracture of his trochanter and a severe bruising of the soft part and ligaments of his right hip joint and sacroiliac joint. After examining some X-ray pictures taken of the injured part of Williams' body, Dr. Denman testified that, basing his conclusion on his knowledge as a physician, he would say that Williams was getting progressively worse; that he would never be able to perform the duties of a worker; that he has not been able since that condition has arisen to so work; that even walking would aggravate the condition; that, if it be supposed that he did work the latter part of April, 1925, at a picture show, where he had a few steps to climb, from a surgical standpoint he would say that he should not do that; that exercise such as manual labor will aggravate his injury because of the fact that it will keep up a low-grade irritation; that from a surgical standpoint he would say the effect of such irritation on his nerves and nervous condition would keep him in a constant nervous strain, perhaps leading to a neurasthenic condition, or an inability to control his nerves. Testifying further, he said:

"As to how this damage to the bone would interfere with his locomotion: Well, these roughened places here on the bone, this is just the top of the hip bone, and the muscles are attached to the roughened surface of the bone. They are now attached over this diseased bone; this bone is inflamed, sore, and tender. Every time he moves his limb, rotates it, or throws it forward, it puts a strain on the muscles attached to this point, and makes them pull against that sore, inflamed bony tissue, and gives him pain. This inflammatory condition is transmitted from the bone into the muscles, making them sore, tender, and nonelastic. They do not stretch such as normal muscle would do that was not inflamed. Now nature is making an effort to put that at rest, to keep it fixed. Nature rebels at any movement he makes. These muscles are in a constant contraction. It lifts the pelvis up. This bone is lifted up. Besides his right leg, this affects his back. He has some trouble between this sacroiliac joint, this joint between the ilium and sacrum. Why, yes, sir, it affects his whole system, his entire system, it makes him nervous—loss of sleep, constant pain—and it affects his nutrition. It affects his whole system every way. I took into consideration the injury to the hip joint and general constitutional symptoms that were produced by this injury. I said that he would not get well, never get well, I said

that he was permanently disabled to perform all manual labor. This disability is total. * * ' *

"Take him sitting in the chair there. It is possible that the rest eases his pain up some. With reference to whether he is disqualified from performing labor where he sat: You misunderstand. If I were treating this patient, I would have him in a hospital at this time in a plaster cast, so that he couldn't do anything. No, sir; I wouldn't keep him there until he died. I would keep him there four or five months to give him absolute rest. Yes, we all, ordinarily, have to do a certain amount of walking. The ordinary exercise a man might take in walking and being on his feet would have a tendency to increase the pain and aggravate his injury, yes. With reference to why I would take that man and keep him in a hospital in a plaster cast for four or five months, and then turn him out, when I could get no possible permanent result; well, I would do that for the reason that it is possible for this bone destruction to go on and completely destroy all the bone, and perhaps a cancerous condition develop in this already diseased bone, cancerous and other serious complications in this bone. Even if it does not become cancerous, it is likely to go on and on until it destroys the entire bone. * * *

"With reference to whether I will testify to this jury that Mr. Williams is totally incapacitated from procuring and retaining any kind of employment: Well, he will certainly do himself a great injury if he does. Yes, sir; I will testify to this jury that he is unable to do so, and should not. As to whether this man is totally incapacitated, permanently incapacitated, to sit up there in a theater at Texas City and operate a machine: Of course, he can, through sheer will power and to keep from starving to death, do it; but whenever he does it he is going to aggravate his every symptom, he is going to make the disease progress ten times more rapidly, and he is going to shorten his days."

By section 15 of article 8306 of our Revised Statutes of 1925 it is provided:

"In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board. This section shall be construed as excluding any other character of lump sum settlement except as herein specified. In special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the board."

[1] The courts of this state, as well as of other states, have held substantially, that the phrase "total incapacity for work," as used in our Workmen's Compensation Act, does not imply an absolute disability to perform any kind of labor, but a person disqualified for performing the usual task of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as "totally incapacitated." Home Life & Accident Co. v. Corsey (Tex. Civ.

App.) 216 S. W. 464; U. S. Fidelity & Guaranty Co. v. Vogel (Tex. Civ. App.) 284 S. W. 650; Moore v. Peet Bros., 99 Kan. 443, 162 P. 295; In re Lacione, 227 Mass. 269, 116 N. E. 485; In re Sullivan, 218 Mass. 141, 105 N. E. 463, L. R. A. 1916A, 378; Duprey's Case, 219 Mass. 189, 106 N. E. 686.

[2, 3] Applying the rule established by the authorities cited, it is clear, we think, that the evidence above stated is amply sufficient to authorize the submission of the issue as to whether appellee Williams suffered "total permanent incapacity" by reason of his injury, and to support the finding of the jury that he did so suffer. Evidence on appeal must be viewed in a light most favorable to the findings of the jury, and if, when so viewed, it supports such findings, this court is without authority to substitute its findings for those of the jury.

[4] By its fourth proposition, germane to its seventh assignment, appellant insists that the court erred in rendering judgment for Williams in a lump sum, because it was shown that the only injury of a permanent nature suffered by Williams was a diseased condition of the bone of his right leg, which might be completely cured by an operation, with the exception only that his leg would be left stiff, and therefore he would be limited, under the statute, to a recovery of only $20 per week for a period of 200 weeks.

Appellant is in no position to invoke the rule sought to be invoked in the foregoing complaint as a defense, in that it is provided, substantially, by section 12e of part 1 of article 8306, Revised Statutes of 1925, when taken in connection with section 12b, that in all cases where liability for compensation exists for an injury sustained by an employee in the course of his employment, and a surgical operation for such injury will effect a cure of the employee, or will materially and beneficially improve his condition, the association may demand that such surgical operation be had, and in such case the association shall provide and pay for all necessary surgical treatment, medicines, and hospital services incident to the performance of said operation; that, in case the association shall file a demand in writing with the Industrial Accident Board for such surgical operation, the board shall immediately order a medical examination of the employee in the same manner as is provided for in section 12e of the Compensation Act:

"If it be shown by the examination, report of facts and opinions of experts, all reduced to writing and filed with the board, that such operation is advisable and will relieve the condition of the injured employee or will materially benefit him, the board shall so state in writing and upon unanimous order of said board in writing, a copy of which shall be delivered to the employee and the association, shall direct the employee at a time and place therein stated to submit himself to an operation for said injury. * * * If the board shall unanimously

find and so state in writing that said operation is advisable, it shall make its order to that effect, stating the time and place when and where such operation is to be performed, naming the physicians therein who shall perform said operation, and if the employee refuses to submit to such operation, the board may order or direct the association to suspend the whole or any part of his compensation during the time of said period of refusal."

There is no evidence that the association has ever, in manner and form as provided by the law, sought to have any operation performed upon Williams.

We are also of opinion that there is no evidence that the diseased condition of the leg of Williams could have been completely cured by an operation, as contended by appellant. The nearest approach to such evidence is the testimony of Dr. Denman, in which he said:

"There is a surgical operation for this condition that would require the going in and chiseling away all of this diseased bone, thereby destroying in toto the muscular attachments at that point, and those attachments could be fixed back, but in dealing with esteomyelitis, a cyst, you have got to ankylose—I mean this operation, when you removed that, you would have to cement it. He would never move it; he would have an absolute stiff joint. It would perhaps stop any further bony structure. You would have a stiffness there, yes. As to whether there would be such stiffness that he could not use his leg: He would walk stiff-legged; he could not climb a ladder. Yes, he could walk stiff-legged."

Again he said:

"I took into consideration the injury to the hip joint and general constitutional symptoms that were produced by the injury. I said he would not get well; never get well."

[5] It is insisted by the eighth assignment that the court erred in refusing to permit plaintiff to have an X-ray examination made of Williams to determine the nature and extent of his injury at the time of the trial.

The complaint of appellant cannot be sustained. The accident which resulted in injury to Williams occurred September 11, 1924. Appellant was immediately informed of such injury, and it had him turned over to its physician and surgeon, who treated him for a month, and then sent him to Dr. Crutchfield, who made X-ray pictures of his injured parts. Thereafter, before the suit was filed, appellant carried Williams to the Houston Clinic, where he remained for some months under care of physicians, during which time several X-ray pictures of him were made. This suit, as had been already shown, was filed July 8, 1925, and no request of the court was made by appellant for an examination of Williams until the case was called and the court was in the midst of the trial. The X-ray pictures taken of Wil-

liams above mentioned were before the court and used by physicians who testified at the trial in their explanations of Williams' injury. Because of the facts here stated, and others stated by the trial judge in his qualification to appellant's bill of exceptions, the request for said examination was refused.

[6] Appellee Williams was permitted to testify that he had not been able to perform any manual labor since he suffered his injury; that he had not been able to do anything; and that he was not able to do what things he did do. Appellant objected to this testimony upon the grounds that it was but the conclusion of the witness, and therefore inadmissible, and has made the action of the court in admitting such testimony the grounds for its ninth assignment of error. There is no merit in the assignment, and it is overruled.

[7] By its tenth assignment, appellant insists that the court erred in permitting Ned B. Morris, counsel for Williams, to make certain improper statements in argument to the jury which were calculated to, and did cause the jury to, believe that the assurance corporation was refusing to pay appellee's compensation in a lump sum out of pure meanness.

It is unnecessary to say more in overruling this assignment than that no objection was made to the argument at the time it was made, nor was there any request made to the court for an instruction to the jury to disregard the same. And it is shown by the record that the first specific complaint made to such argument was some days after the trial had ended.

For the reasons pointed out, the judgment is affirmed.

Affirmed.