## HISSOM DRILLING CO. et al v. BENSON et al.

No. 22452. Opinion Filed Nov. 17, 1931.

Withdrawn, Corrected and Refiled Nov. 24, 1931.

Keaton, Wells, Johnston & Barnes and B. C. Davidson, for petitioners.

Leo J. Williams and M. J. Parmenter, for respondent.

McNEILL, J. This is an original proceeding in this court to review an order and award of the State Industrial Commission in favor of respondent, D. A. Benson, made and entered on the 13th day of May, 1931, wherein the Commission found that the respondent was totally disabled from the performance of ordinary manual labor. The respondent was employed by the Hissom Drilling Company and received an accidental personal injury arising out of and in the course of his employment with said, petitioner by reason of an explosion that occurred on March 17, 1930, near Maud, Okla., when the respondent was standing a short distance from a steam boiler which exploded. Respondent was knocked over by the force of the explosion, crawled out of the debris, and came over to where some men were taking care of other injured parties. He was bruised, dazed, and was taken to the hospital in Maud, Okla., where he stayed for several hours, after which he went home. He did not recover so rapidly as was expected. He was paid compensation and was called in for further treatment.

Petitioner admits the employment and that the injury resulted in the course of employment. The material portion of the award is as follows:

"That, as a result of said accidental inclaimant, D. A. Benson, was in the employ of Hissom Drilling Company, and engaged in a hazardous occupation covered by and subject to the provisions of the Workmen's Compensation Law; that, in the course of his employment and arising out of same, said claimant, on or about March 17, 1930, sustained an accidental personal injury, the nature of which was sprained back, right foot, and leg and laceration over left mastoid.

"That, as a result of said accidental injury, claimant has been since March 17, 1930, and was at the time of his hearing, totally disabled from the performance of ordinary manual labor.

"That the average wage of claimant at the time of said accident was $40.38 per week.

"The Commission is of the opinion, by reason of aforementioned facts, the claimant is entitled to compensation from October 17, 1930, to April 24, 1931, date of said hearing, less any temporary total already paid, at the rate of $18 per week, from the 17th day of March, 1930, to the 24th day of April, 1931, amounting to $1,023; and continued thereafter until otherwise ordered by the Commission, and also such reasonable medical expense as has been incurred by claimant by reason of said injury.

"It is therefore ordered: That within 15 days from this date, the respondent or in-

surance carrier herein pay to the claimant, D. A. Benson, the sum of $357, being compensation from December 6, 1930, to April 24, 1931, and any compensation remaining due from April 24, 1931, to date, and continuing thereafter weekly at the rate of $18, until otherwise ordered by the Commission, and also pay such a reasonable medical expense as has been incurred by claimant by reason of said injury."

Petitioner contends for the following assignments of error:

"1. That there is not any substantial evidence or proof to sustain the award made by the Commission and the same is contrary to law.

"2. That the proof adduced in said cause shows that the disability had terminated and that the claimant was able to carry on ordinary and reasonable labor not involving heavy physical exercise, and that claimant, after his recovery, was tendered ordinary employment which he was fully capable of performing, but has failed and refused to accept such employment or to engage in work and enterprise that would afford him reasonable remuneration."

The award found a total disability from March 17, 1930, to the date of the hearing May 13, 1931, and petitioners contend that the evidence does not support such finding. The record shows that the respondent sustained an injury to his back, hips, and also lacerations on the back of his right ear and bruises on or about the body. It appears that payments of compensation were paid until July 26, 1930, at which time petitioners filed a motion to suspend the payment of compensation thereafter. A hearing on said motion was had on the 3rd day of October, 1930, and an award was made holding that respondent at the date of the hearing was temporarily totally disabled from performing ordinary manual labor, and was entitled to compensation to the date of said order, and to continue thereafter until further order of the Commission. Petitioners objected to the award and sought to have the same reviewed. However, this proceeding was dismissed and petitioners paid respondent the compensation provided for in the order made on the 20th of October, 1930. Subsequent thereto another motion to suspend payment of compensation was filed, wherein it was stated that respondent had been paid compensation at the rate of $18 per week from the 17th day of March, 1930, to the 6th of December, 1930, a period of 27 weeks, and it was further alleged therein that, on the 6th day of December, 1930, said respondent was able to return to work. This matter was set for hearing on petitioners' motion to dis-

continue compensation, and testimony was again heard before the Commission in Oklahoma City on the 20th of April, 1931. The Commission found at the conclusion of this hearing that respondent was temporarily totally disabled from the performance of ordinary manual labor, and made aforesaid order and award to the effect that respondent was entitled to the sum of $18 per week until the further order of the Commission. It is from this order that the petitioners have sought to review the action of the Commission.

Respondent, in reference to whether or not he was able to work, testified as follows:

"Q. Mr. Benson, have you worked any since December 6, 1930? A. Just around my house there and some garden. I tried to work some in the garden. Q. Are you able to do this? A. Just a little while at a time, an hour or something like that. Q. What happened to you when you attempted to work in the garden? A. Pain in my back, did not have the physical strength to stand work, not able to stand it half of the time, not able to work mainly on account of the injury to the leg. Q. Do you feel that you are able to do ordinary manual labor at this time? A. No, I do not. Q. You are still complaining of your back and leg and knee hurting you at this time? A. Yes, sir."

On cross-examination as follows:

"Q. And, in view of that, you did not go out and try to even make an attempt? A. I think that my own physical condition; I I think that I know my physical condition, better than doctors, and I believe that I know whether I am able to do anything or not. Q. You would not be willing to go out and try to do any work? A. I really think I know what I am able to do, and regardless of what the doctors say, that does not make me well. When a man cannot work, he can't work, regardless of what the reason is, if a man is in pain and hurting all the time, I don't think that he can work. Q. You cannot say whether your leg is getting any better or not? A. It is about the same as it was about three months ago, just hurts and doesn't get any better. Q. What are you doing now? A. Just around the house and have tried to work a little gardening."

Dr. C. C. Shaw testified as follows:

"Q. Doctor, what would be your opinion as to whether or not this man could go out and do hard manual labor? A. I don't think that he could. Q. Would you advise him to go out on a drilling well and attempt to work? A. I would not."

H. W. Strain testified that if respondent would come to him, he would give him a job, and respondent explained as to why he did not apply for the job as follows:

"Q. Mr. Benson, you heard the discussion given in a testimony here with reference to the respondent giving you a job in drilling a well the other day? A. Yes, sir. Q. Doctor Holly at Maud has been your physician for sometime, has he not, in fact, ever since the accident over a year ago? A. Yes, sir. Q. Since the hearing held here one day about a week ago, have you talked to Dr. Holly and gotten his advice as to what to do about it? A. Yes, sir. Q. What was his advice as to whether or not you should go out and attempt to work on drilling a well? A. He advised that I should not."

Dr. Holly, who treated the respondent for a period of approximately 30 days immediately following his injury, and on several occasions thereafter up to the time of the hearing, testified as follows:

"Q. What is your opinion from your observation of Mr. Benson, together with your recent examination, as to whether or not he is able to perform any ordinary manual labor at this time? A. He is not able to perform any manual labor. Q. In your opinion, has he been able to at any time since the date of the accident, March 17, 1930? A. No, I don't think so."

On cross-examination:

"Q. Doctor, this last examination you made of this claimant was at his own solicitation, was it not? A. Yes, sir. Q. What makes you believe that he is unable to work? A. Because of the condition of his knee. Q. Do you think that is in such a condition that he cannot do any kind of hard work? A. Yes, sir. Q. Is that his main trouble or condition at this time? A. He still complains of pain in his ankle and back. Q. Do you think that he could work if the knee was all right—could work with his back condition? A. Well, I have no way of saying anything for sure about his back, but if it were not for the knee condition, I would advise him to try some light work, but still he has pain in his back all the time, and if his knee was all right, I don't know whether I would advise him to try work on account of the back, as he complains of pain in it at all times. Q. What do you find wrong with the knee? A. A shortening of the ligaments of the knee, posteriorily and cryptis, feverish and slight swelling. Q. If he is able to walk around with a slight limp, don't you think that he is able to do some kind of work? A. I don't think that he is able to do ordinary manual labor. Q. Do you know what he is doing at the present time? A. No, I never see him doing anything, since he was injured. Q. Do you know whether he has made an attempt to work any? A. Yes, he has attempted to work. Q. Is there any treatment that you would recommend for his knee, doctor? A. Yes, rest. Q. Do you not think that from March 17, 1930, he has rested enough on this knee for it to recover, A. It

looks like that it would help quite a bit, but it does not seem to be. Q. Is there any treatment at this time that you would suggest or you would recommend? A. No."

Dr. Shaw also testified as follows:

"Q. Would you advise this claimant to go back to doing oil field work, such as he was doing at the time of this accident? A. No, I don't think he is physically able to do it. * * * Q. Doctor, didn't you notice some improvement from his condition from the first to the last examinations? A. I did in the knee. The knee is not swollen; however there is a little stiffness there. * * * Q. What do you base your opinion on? A. I base my opinion on the fact that he had an injury to the back—to the lumbar region of the back. The X-ray shows there was a breaking up of the capsular ligaments that hold the bones together, because there is separation of the fourth and fifth lumbar, and there seems to be quite a bit of calcarious deposit thrown out about the lower portion of the lumbar region where the hip bones articulate with the sacrum."

There is testimony by some of the doctors produced on behalf of petitioners that it was their opinion that respondent was able to work, that he might suffer a little discomfort in the knees, and that it was their opinion he was able to go back to work doing ordinary manual labor. However, as to whether or not he was temporarily totally disabled was a question of fact for the Commission, and there is competent evidence to support this finding.

Petitioners contend that since work was offered the respondent and he refused to try to perform it, he should be denied compensation, and that he was capable to engage in light work. The award is not based upon permanent partial disability, but for temporary total disability.

This court, in the case of Cosmos Mining Co. v. State Industrial Commission, 101 Okla. 283, 225 Pac. 720, in the third paragraph of the syllabus, in speaking of the period of temporary total disability, says:

"Subdivision 2, sec. 7290, C. O. S. 1921, affords the proper measure of an award for a temporary total disability, and this award continues during the period of the total disability but not to exceed 300 weeks, but after the total disability has ceased, which is to be determined by the ability of the claimant to work at some remunerative occupation, the claimant is no longer entitled to an award under subdivision 2, sec. 7290."

In the case of Thompson v. State Industrial Com., 138 Okla. 166, 280 P. 597, this court says:

"This claimant was entitled to compensa-

tion for temporary total disability, being that time, or healing period, during which, by reason of the injuries received, he was unable to work or was totally disabled."

Counsel for petitioners quote the case of Otis Elevator Co. v. Haveley, 148 Okla. 82, 296 P. 1106, to sustain their contention that the proof confirms and substantiates the theory that respondent is able to carry on light work and has been tendered such work at the hands of an employer, but refused to accept the same or to make any fair effort to see what he could do. The second paragraph of the syllabus in that case is as follows:

"Incapacity or disability cannot be found to be total, where it appears that the claimant's earning power is not wholly destroyed and that he is still capable of performing remunerative employment. In such case he is under the obligation of making active efforts to procure such work as he can still perform."

In that case, respondent had previously earned $40 a week, and after a period of disability he returned to work and was able to earn about $33.50 a week, but for sometime after he returned to work he was required to use what is known as a "Taylor body brace." The injury involved some disability to respondent's back, and this court held that the applicable section of the Workmen's Compensation Acts to be applied in that case came under the residuary clause entitled "Other Cases" under permanent partial disability. However, the Commission in the case at bar found respondent was suffering from a temporary total disability and not a partial permanent disability.

This court, in the case of Smith & McDonald v. State Industrial Commission, 133 Okla. 77, 271 P. 142, on page 79, Okla. Reports, states:

"The period of temporary total disability is that temporary period immediately after the accident during which the injured employee is totally incapacitated for work by reason of illness attended by the injury. It is during that period the law authorizes the award of compensation for temporary disability. If complete recovery attends the patient, compensation ceases. It may never continue longer than 300 weeks. If the disability proves not temporary, but permanent, it should be controlled by subdivision 1.

"The Supreme Court of Montana, in the case of Dosen v. East Butte Copper Mining Co., 78 Mont. 579, 254 P. 880, said:

" 'If a man who has a broken leg is confined to his bed for a period of two months, during that time he is temporarily totally disabled. If the leg is so badly injured that

a good recovery never ensues, or if complications from the injury set in so that he never makes a good recovery, he then has a permanent partial disability. The period of total disability has ceased and a period of partial disability has succeeded. Here are two classes of disabilities, one succeeding the other. When the total disability ends, and the extent of the partial disability, are questions of fact, to be determined in the first instance by the Industrial Accident Board."

In the case of Thompson v. State Industrial Commission, 138 Okla. 166. 280 P. 597, this court said:

"Subdivision 2 of section 7290, Compiled Oklahoma Statutes 1921, as amended by chapter 61, sec. 6, Session Laws of 1923, p. 123, provides for the payment of compensation for temporary total disability, which is a specific injury under our compensation law. Subdivision 3 provides for payment of compensation for permanent partial disability, which is a specific injury. This claimant was entitled to compensation for temporary total disability, being that time, or healing period, during which, by reason of the injuries received, he was unable to work or was totally disabled. It was this period of time that the Industrial Commission failed to take into consideration, or make any award for the loss of time for temporary total disability."

The Supreme Court of Kansas, in discussing the phrase "total incapacity for work," as used in the Workmen's Compensation Act, in the case of Moore v. Peet Bros. Mfg. Co., 162 P. 295, states as follows:

"The phrase quoted does not imply an absolute disability to perform any kind of labor. It requires a practical and reasonable interpretation, as is illustrated by the familiar rule that inability to obtain work, caused by an injury, is classed as total incapacity. Gorrell v. Battelle, 93 Kan. 370, 144 P. 244; Knowles's The Law Relating to Workmen's Compensation (3d Ed.) p. 218; note 5, N. C. C. A. 735. One who is disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated."

Schneider, in his work on Workmen's Compensation Law, defines "temporary total disability" as follows, on page 1085:

"Sec. 422. Temporary total disability exists when the employee is incapacitated for the performance of any work for a limited time, after which time he is able to resume work although he may still be partially incapacitated."

Bradbury's Workmen's Compensation Law, in the Third Edition, page 849, defines "temporary total disability" as follows:

" 'Temporary total disability,' however, is usually understood to mean the period following an injury during which the employee is unable to do any work whatever, with the assumption that eventually he will be cured to such an extent that he either fully recovers from the result of the injury, or he will remain partially disabled only and can do either lighter work or a portion of his former work. Thus temporary total disability and a condition of permanent partial disability may exist at the same time."

In the case at bar, it is urged by petitioners that the evidence fails to show that respondent is totally disabled as indicated by the terms of the award, and that respondent declines to accept light employment and deliberately refuses to try to carry on such work and minimize the ecomomic loss. There is evidence that respondent attempted to do light work. Respondent testified that he was unable to work. In this he is corroborated by two medical experts. Respondent should not be compelled to perform manual labor when attended with pain and suffering in order to minimize an economic loss. The question of whether or not respondent was at the time of the last hearing totally disabled was a question of fact for the determination of the Commission. There is evidence in the record reasonably tending to support this finding of fact. However, it may be that in the future respondent's condition will improve so that he may be able to engage in manual labor. This is a matter for future determination of the Commission on the ground of change of condition on its own motion or on the application of any party in interest.

The award of the Commission is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, and KORNEGAY, JJ., concur. ANDREWS, J., absent.

Note.—See under (1) annotation in L. R. A. 1916A, 266; L. R. A. 1917D, 186; 58 A. L. R. 1382; 28 R. C. L, 828, 829; R. C. L. Perm. Supp. p. 6254; R. C. L. Pocket Part, title "Workmen's Compensation," § 116.