No. 20,501.

WARREN L. MOORE, *Appellee,* v. THE PEET BROTHERS MANUFACTURING COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

COMPENSATION ACT—*Personal Injuries—Lump-sum Judgment—Insufficient Showing for New Trial.* A lump-sum judgment under the workmen's compensation act, based on a finding of permanent total disability, can not be set aside, as being against equity and conscience, nor is a case established for the granting of a new trial upon the ground of newly-discovered evidence, upon a showing that the injured workman is conducting a cleaning, pressing and tailoring business out of which he is making twelve to fifteen dollars a week, where it is not shown that any of the physical labor in connection therewith is done by himself

Appeal from Wyandotte district court, division No. 1; ED-WARD L. FISCHER, judge. Opinion filed January 6, 1917. Affirmed.

*Adrian F. Sherman,* of Topeka, *Thad B. Landon,* of Kansas City, Mo., *E. S. McAnany,* and *M. L. Alden,* both of Kansas City, for the appellant.

*R. O. Douglas,* and *Robert H. Worline,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: On October 27, 1914, Warren L. Moore recovered a lump-sum judgment for $2710, under the workman's compensation act, against the Peet Brothers Manufacturing Company, on account of an injury received while in its employ, which was found to have resulted in permanent total disability, compensation being allowed for the full period of eight years—the statutory maximum. On October 27, 1915, the defendant filed a motion asking that the enforcement of the judgment be enjoined, and that it be modified, on the ground that the period of the plaintiff's total incapacity had ceased, and that he was then earning from $12 to $15 a week. The motion was denied, and the defendant appeals.

The vacation of the judgment is asked on the ground that it should not be enforced, because it is shown to be against equity and conscience by facts which could not have been developed before its rendition. A similar application was denied in *Roberts v. Packing Co.,* 98 Kan. 750, 160 Pac. 221, for the specific reason that it sought the same relief as a statutory petition for a new trial on the ground of newly-discovered evidence, and could not be entertained because not made within a year from the date of the judgment. Here the motion was filed on the corresponding day of the following year—just within the limitation period. (*Commissioners of Smith Co. v. Labore,* 37 Kan. 480, 15 Pac. 577.)

The affidavit by which the motion was supported sets out that "the plaintiff herein, Warren L. Moore, is now conducting a cleaning, pressing and tailoring business in the basement of the building wherein he lives, . . . and that the

said Warren L. Moore is making from twelve ($12) dollars to fifteen ($15) dollars a week out of said business." The question is presented whether the fact that an injured workman is able to, and does, conduct a business of his own, which returns him an income, is inconsistent with a finding that his injury resulted in his permanent "total incapacity for work" within the meaning of the compensation act. ·

The phrase quoted does not imply an absolute disability to perform any kind of labor. It requires a practical and reasonable interpretation, as is illustrated by the familiar rule that inability to obtain work, caused by an injury, is classed as total incapacity. (*Gorrell v. Battelle*, 93 Kan. 370, 144 Pac. 244; Knowles' The Law Relating to Workmen's Compensation, 3d ed., p. 218; Note, 5 N. C. C. A. 735.) One who is disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated. In case of partial incapacity the statute provides for compensation approximating half the difference between the workman's former average earnings and what he is able to earn after the accident "in some suitable employment or business." The words quoted are also found in the English statute, and are said to have been inserted therein "in order to settle the question whether a workman, who has partially recovered from his injury, is bound to accept any work that may be offered to him, however unsuitable or distasteful, on pain of having to submit to a reduction in his weekly compensation." (Knowles' The Law Relating to Workmen's Compensation, 3d ed., p. 228.) The Scotch Court of Session has held that the profits of a business owned by the injured workman are not to be classed as earnings, the Lord President saying:

"It seems to me that the man's wage-earning capacity is a perfectly different thing from the question of what profit he makes in a business; and the learned Sheriff, upon the statement of the case, has considered nothing else. He has taken the business which this man ran. He has taken the net drawings, then he has deducted the expenses; he has allowed for interest upon capital at a fixed sum, and has deducted wages which he paid to other persons, and then the remainder he has taken as the wage-earning capacity. That seems to me a perfectly different thing. The amount remaining may be his wage-earning capacity, or it may not. But you can not get at the man's wage-earning capacity by

finding out what he is making in business. I agree that the question of what he is earning, or able to earn, is not to be so rigidly interpreted as it is when you are to look at nothing except the wages which he gets from some other person. It may be that the business he is in makes him his own master; but none the less his wage-earning capacity is what he would make if he was employed as a servant.

"I think the fallacy of the learned Sheriff-Substitute's method is very easily demonstrated by taking an example. Let me suppose that two workmen have been injured by the same accident, that they have both been injured in the same manner, and that they each afterwards take up a public-house business. The one starts his public-house in the town A and the other starts his public-house in the town B; and the public-house in A, owing to the habits of the inhabitants, is a better business than the business in B. The result would be, if you treated the matter as the Sheriff-Substitute has done, that you would find that the profits made by the one man were very different from the profits made by the other man. Is it not almost absurd to suppose that that represents the wage-earning capacity? There is of course an element of luck in every business, which has nothing to do with the wage-earning capacity.

"In the circumstances which we find in this case I think the inquiry the Sheriff-Substitute had to make was in one sense a simple one, although to be decided roughly, as these things must be. If he had discovered how much work this man did in his public-house—that is to say, what he really worked at—then I think that what he would have to apply his mind to would be, What would the services which this man actually rendered have been considered worth if, instead of serving himself, he had been serving somebody else? That is to say, What would he have got in the market if he had gone there for work in that business? (*Paterson v. A. G. Moore & Co.*, 47 Scot. L. Rep. 30, 31. For other reports in which the case is published see L. R. A. 1916 A, 144, note 51.)

In England the Court of Appeal has held (reversing the county court) that in determining the amount to be allowed a workman for partial disability, account must be taken of the profits of a business which he set up after the accident, and which he carried on for himself. (*Norman & Burt v. Walder*, [1904] 2 K. B. 27. For other reports in which the case is published see L. R. A. 1916 A, 145, note 52.) What was decided, however, was that the subsequent earnings of the workman were not limited to wages received from another, but might include the fruits of his efforts when employed in his own behalf. The decision is consistent with the theory that only such part of the income of the business should be considered as is to be attributed to the personal exertions of the workman, and this view of its effect was taken in a dictum in a later

case decided by the Kings Bench Division where Fletcher Moulton, L. J., said:

"The decision in that case is, of course, binding upon me, and I do not wish to express any dissent from it; but at the same time I do not understand it to mean that you can, in all cases, take the actual profits of a business which an ex-workman has set up as 'earnings' for the purpose of calculating compensation. It would be most unfair so to do as a general rule; and the unfairness might tell against the workman or against the employer according to the circumstances of the case. The workman might be employing capital of his own in the business, the profits of which the employer ought not to be able to appeal to in reduction of compensation for incapacity; and, on the other hand, the business might be unsuccessful, and the profits might inadequately represent the earning power of the workman as a workman. I am inclined to think that the phrase in paragraph 3 'the average weekly amount which he is earning or is able to earn in some suitable business after the accident' means in such a case the value of the work which the workman is doing in his own business; that is to say, the wages that he would have to give to a suitable man for performing the services therein which he himself is performing." (*Calico Printers' Association, Limited, v. Higham*, [1912] 1 K. B. 93, 102.)

We find no American cases in which the question has been referred to. We do not consider the provision of the compensation act relating to the earnings of an injured workman "in some suitable employment or business" as implying that the income derived from a business which he owns is to be regarded in itself as a measure of his earning capacity or degree of disablity. Assuming that money which he receives as the direct result of his personal labor, while working in his own behalf, and not as the employee of some one else, is to be given the same effect in that connection as though it came to him for services rendered to an employer, that is the extent to which the revenue he may receive otherwise than as wages should be allowed to affect the matter. The return on any capital he may have, although augmented by his personal attention in looking after the business in which it is invested, clearly is not an element to be considered in the administration of the compensation act. Nor do we think such consideration should be given to the mere direction of the operation of a business which he owns—its control and management as proprietor. If it had been shown in this instance that the plaintiff personally performed a part

of the work of cleaning, pressing and tailoring, a very different question would be presented. Possibly any portion of his income that could be traceable to such work on his part should be given the same effect as though he received it as wages. But the showing made is merely that he is "making" a certain sum weekly out of the business which he is "conducting" as owner, and this might be the case although he were a complete physical wreck. A judgment based on a finding that a workman's injury has resulted in his total disability to work can not be said to be inequitable or against conscience because he has the thrift and intelligence to provide for his support by investing such means as he has in a business carried on by the labor of others under his direction.

The decision of the district court overruling the motion is affirmed.