## HARRY TIDD CONSTRUCTION CO. et al. v. MEAD et al.

No. 23736. Opinion Filed Feb. 7, 1933.

Rehearing Denied April 11, 1933.

Pierce, Follens & Rucker, for petitioners.

J. Berry King, Atty. Gen., and Moss & Powell, for respondents.

RILEY. C. J. This is an original action wherein the petitioners seek a review of the proceedings and the vacation of an award of the State Industrial Commission.

The accidental injury out of which the claim for compensation arose occurred August 6, 1922. On that date Roy H. Mead, while in the employ of Harry Tidd, suffered an accidental injury to his left leg resulting in what is termed osteomyelitis of the left femur. Several operations were performed without success, and about October 8, 1924, the left leg was amputated above the knee. This was what was termed an emergency operation, and another operation became necessary, which was performed about January, 1925.

About December 14, 1925, a final award was made for the loss of the leg and compensation was paid therefor for 175 weeks, at $8.06 per week. Stipulation and receipt were approved February 27, 1926.

On January 7, 1930, claimant filed with the State Industrial Commission a claim for compensation. Therein he claimed compensation for temporary total disability for the period from August 6, 1922, to April 15, 1925, in addition to the 175 weeks' compensation theretofore paid for the loss of the leg, and further alleged:

"The claimant says further that as a direct and proximate result of such injury, and on or about the first of April, 1929, this claimant began to suffer pains, swelling and tenderness in his left arm, which pains, swelling and tenderness was accompanied by high fever, and that on or about the 15th day of June, 1929, it became necessary for this claimant to again submit to an operation for the removal of dead bone

from his left humerus, and that as a result of the last mentioned operation, occasioned by the circumstances above set forth, this claimant was further temporarily totally disabled from performing any manual or mechanical labor from the 15th day of June, 1929, to the 12th day of September, 1929."

He also claimed compensation for temporary total disability on account thereof for the period between June 15, 1929, and September 17, 1929, and for such further period as the evidence might show he was temporarily totally disabled. He also claimed for medical and surgical expenses incurred by reason of certain operations performed upon him after those above mentioned. Notice was served and the respondent insurance carrier filed a response in which it pleaded res adjudicata as to the claim for compensation for temporary total disability for the period between August 7, 1922, and April 15, 1925, and denied any disability subsequent to April 21st, by or resulting from the accidental injury of August 7, 1922.

Hearing was had, resulting in an award of 300 weeks' temporary total disability from and after August 12, 1922, in addition to the 175 weeks theretofore paid.

Proceedings were commenced in this court to review this award, resulting in a reversal thereof; not on the merits, but on account of inability of the petitioner therein to procure a transcript of the evidence and the cause was remanded to the Commission for a new hearing. Harry Tidd Const. Co. v. Mead et al., 156 Okla. 144, 9 P. (2d) 919. Rehearing was had resulting in a finding of employment of claimant by petitioner herein in a hazardous occupation and the accidental injury received August 7, 1922, arising out of and in the course of such employment, and the finding that such injury resulted in acute osteomyelitis, by reason of which it became necessary to amputate the left leg; claimant's daily wage was $2.80; that claimant had never been paid anything on account of temporary total disability; that claimant had been paid 175 weeks' compensation at $8.08 per week, or a total sum of $1,414, for the loss of the leg, and:

"That on January 7, 1930, claimant filed his motion to reopen his case on a change of condition, and the evidence shows that claimant is permanently and totally disabled from the performance of manual labor."

Compensation was awarded as and for permanent total disability, 500 weeks at $8-08 per week, less the 175 weeks theretofore paid, computed from June 3, 1931, and all reasonable medical and doctor bills incurred by reason of said accidental injury.

Briefly, the evidence shows that shortly after the accidental injury of August 6, 1922, in which claimant bruised his left leg above the knee, osteomyelitis developed; that osteomyelitis is an acute inflammation of the bone and bone marrow; the attack was localized in the left femur; that as a result it later became necessary to amputate the leg; that the disease mentioned is caused by germs or infectious organisms carried in the blood stream until they lodge in some portion of the body, where they set up an infection; that it may remain in the blood of the patient for a long time and may at any time become active in any part of the body; that about June, 1925, claimant's left shoulder became infected, where an abscess formed, caused by the original injury, according to the medical testimony, and rendering it necessary to perform an operation; again in April, 1929, his left shoulder became infected. In June of the same year an examination disclosed that pus was forming in the humerus of the left arm, probably aggravated by the use of a crutch, but traceable primarily to the condition of the leg according to the medical testimony. An operation was performed and the infected part of the bone was removed. Claimant was in the hospital until August 6, 1929.

On September 30, 1930, the shoulder again became inflamed and swollen, but no operation was performed. Again on March 7, 1931, a large swelling appeared about the shoulder. Claimant was advised to rest and not to use the crutch. An X-ray picture was taken June 7, 1929, showing dead bone in the upper end of the humerus; another X-ray picture taken April 14, 1932, showed a diseased condition of the upper end of the left humerus.

As to claimant's condition at the time of the hearing, Dr. McBride testified in part:

"Well, he has, from a medical standpoint —I think he has used it, but looking at it from a physician's standpoint, he had what I advised him to have: entire disuse of the arm."

As to whether or not the condition is permanent, Dr. McBride testified:

"Q. Doctor, you have taken care of Mr. Mead all the time since 1922, up until the present time? A. Yes. Q. And I believe you testified on direct examination that he has been unable to do manual labor since that time from a medical standpoint? A. Yes. Q. Taking into consideration the history of the case, your different medical treatments, operations and your observa-

tion, is this man or this claimant permanently and totally disabled from doing manual labor? * * * A. Yes. Q. Then I take it, Doctor, this man's condition, in your opinion, will be this way always? A. I believe it will be. Q. Will further medical treatment aid this man in any way? A. Yes. Q. Then, Doctor, if further medical treatment and surgery will help this man's condition, are you of the opinion now to state whether or not he is permanently and totally disabled? A. Yes. Q. Please state whether he is or not? A. I think he will for this reason: His system has been exposed over a period of many years with an infectious organism which has buried itself in scar tissue about the stump of his leg and about the upper end of the humerus, in which at any time the scar tissue or the sinuses containing the organisms might insidiously become active. If he attempts to do any kind of ordinary manual labor, he is exposing himself to aggravation of the condition that now exists. That medical treatment which I have mentioned will help him to clear up the condition in his arm, which is still active, in that an abscess was opened only a few days ago on his arm. The bone is weak and any ordinary manual labor would, therefore, tend to aggravate this condition at any time throughout his life. Q. In other words, medical treatment would help the condition he has now in his arm, but that if he attempts to do any manual labor it might aggravate it and it would break out or turn up at some other place in the body, is that correct? A. Yes. Q. Is there no cure for this condition? A. No. Q. Doctor, taking the whole case into consideration, is it your opinion that the disability he has at this time is the result of the injury he received in August, 1922? A. Yes. Q. And that condition will be permanent? A. Yes."

The evidence shows, however, that from September, 1930, to June, 1931, claimant was employed by a cab company to answer calls over a telephone, etc., at which he earned some $15 per week, and in March, 1928, he worked for the Oklahoma Natural Gas Corporation, checking meter readings, and in May, 1929, shortly before the operation of June 7, 1929, he was employed by the Oklahoma Gas & Electric Company at similar work.

It is contended that because claimant was for a time able to do clerical work and thereby earn a salary, the finding of the State Industrial Commission of permanent total disability cannot be sustained, and that the award must, therefore, be vacated.

The contention is not well taken. The record shows the loss of one leg in 1925. For this claimant was fully compensated. Thereafter the humerus of the left arm became infected. This is such a change of condition as would permit the reopening of the case. For all practical purposes claimant has no use of the left arm. He is unable to wear an artificial leg with any satisfaction. This necessitates the use of crutches; if he uses a crutch it aggravates the disease of the bone of the left arm, and according to the physician's testimony, claimant, from a medical standpoint, has "complete disuse of the left arm." In addition thereto, the germ or organism is in the blood stream and frequently causes abscesses to form and this condition the physician says is incurable.

Section 7290, C. O. S. 1921, before the amendment of section 6, ch. 61, S. L. 1923, and as amended thereby, provides that the loss of both hands or both feet or both legs or both eyes or any two thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability, and that permanent loss of the use of any such members shall be construed as the equivalent of the loss of such member.

While there is no specific finding by the State Industrial Commission that claimant had permanent total loss of the use of the arm, there is abundant evidence to show such loss, and loss of the use of the arm would include the loss of the use of the hand.

Under the record as a whole, we are unable to say that there is no competent evidence reasonably tending to support the finding and award.

The petition is denied and the award is hereby affirmed.

SWINDALL, ANDREWS, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., and McNEILL, J., absent.

Note.—See under (1) annotation in L. R. A. 1916A, 256; 8 A. L. R. 1326; 24 A. L. R. 1467; 67 A. L. R. 794; 28 R. C. L. 821; R. C. L. Perm. Supp. p. 6243; R. C. L. Pocket Part, title "Workmen's Compensation," § 106. (2) annotation in L. R. A. 1916A, 266; L. R. A. 1917D, 186; 28 R. C. L. 812, 828, 829; R. C. L. Perm. Supp. p. 6254; R. C. L. Pocket Part, title "Workmen's Compensation," § 116. (3) annotation in L. R. A. 1916A, 255; 28 R. C. L. 819; R. C. L. Perm. Supp. p. 6242.