[No. 28087. Department One. January 9, 1942.]

ALBERT KUHNLE, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 120 P. (2d) 1003.

*Phil K. Eaton,* for appellant.

*The Attorney General* and *June Fowles, Assistant,* for respondent.

ROBINSON, C. J.—Claimant was employed by Simpson Logging Company as a logger, and on April 16, 1935, received injuries, arising out of and in the course of his employment, permanently disabling him. He was married and had eight children, seven under sixteen years of age, and was awarded compensation at the rate of $85 a month until October 19, 1936, and thereafter, at the rate of $42.50 a month until October 21, 1937. The department also paid the expenses of his medical treatment.

On October 22, 1937, the department closed the claim with an allowance of $1,440 for permanent partial disability, rated at forty-eight degrees. Claimant appealed to the joint board, contending that he was permanently totally disabled. The board, after several hearings, entered an order finding that he was permanently partially disabled to the extent of sixty degrees, or seventy-five per cent total disability, and awarding him a further sum of $360, or a total allowance of $1,800, which is seventy-five per cent of the maximum allowance of $2,400 which may be made for permanent partial disability resulting from unspecified injuries. Claimant appealed to the superior court and demanded a jury trial. The trial court sustained a challenge to the sufficiency of the evidence to warrant submission of the case to the jury, and this appeal followed.

The question raised by this appeal is whether or not there was evidence that claimant was totally disabled, warranting submission of that question to the jury.

■ We have repeatedly upheld the validity of Chapter 184, Laws of 1939 (Rem. Rev. Stat. (Sup.), § 7697-2 [P. C. § 3488-21]), which provides that either party to an appeal from a joint board decision is entitled, on demand, to a trial by jury. *Alfredson v. Department of Labor & Industries,* 5 Wn. (2d) 648, 105 P. (2d) 37; *Cooper v. Department of Labor & Industries,* 11 Wn. (2d) 248, 118 P. (2d) 942. In the *Alfredson* case, after pointing out that the statute is somewhat unique, in that it provides for a jury trial upon evidence that had already been taken before examiners and reduced to writing, we said:

"If the evidence introduced at the hearing before the joint board offers room for a difference of opinion in the minds of reasonable men, then the case must be presented to the jury."

The evidence in this case shows that claimant was forty-four years of age at the time of the accident. He had had little schooling and none whatever after coming to this country at the age of fourteen years. He had worked in the woods at hard manual labor practically all his life. He was not fitted by training or experience to do work of any kind, except that of manual labor. The injuries he received consisted of a fracture of the sixth and seventh cervical vertebrae, with a displacement of the sixth vertebra forward on the seventh; in nontechnical language, a broken neck. All of the doctors who examined him agreed that he was permanently disabled. They disagree only as to the extent of his disability. They agree that he will never be able to engage in his former occupation or perform

hard manual labor. The doctors called by the department estimated the extent of his disability as seventy-five per cent of total. The doctor called by claimant testified that, in his opinion, he was totally disabled from engaging in any gainful occupation. Dr. Kinne, called by the department, testified:

"Q. Doctor, in regard to your statement that you thought he was able to carry on a gainful occupation, I think, in your report you limited that to just what the man described to you he was attempting to do around his farm? A. Yes. Q. He would not be able to carry on a gainful occupation consisting of manual labor? A. No sir. Q. He would not be able to return to his former occupation as a hook tender in the woods? A. I don't believe he would. Q. You, of course, Doctor, could not qualify, could you, as to whether supervising a farm is a gainful occupation? A. I think that would be a gainful occupation. It seems to me it would be."

Dr. Calhoun, called by the department, testified:

"Q. Doctor, the amount of disability which you rated the man was seventy-five per cent of what you consider the maximum award for an unspecified disability? A. Yes. Q. And that award was only for the neck condition and the conditions of the body below the site of the fracture in his neck? A. No, that was for his total complete—that is for his sum total disability taking everything into consideration whether it was all in the neck or partly in the brain or whatever it was from. We thought that was his total disability which we expressed by seventy-five per cent of the total. Q. Of course he described to you and you described in your report what type of work he was attempting to do? A. Yes. Q. And how he was occupying himself? A. Yes, as to how he occupied his time. We took his word for that, of course. Q. Could you say whether you think he is able to work in the competitive labor market? A. There is not any doubt there are some things he could do. Of course he is a man that is considerably handicapped. There is no question about that. He has three quarters maximum disability but

still there are numerous things he could do but if he had to go out and compete with the husky loggers and hook tenders, in such work as that, he could not do that. Q. He could not return to his former occupation, then? A. I don't believe so. He might but I rather doubt if he could. Q. Would he be able to compete in the ordinary competitive market for ordinary general manual labor of a gainful occupation? A. Of course that question does not admit of a clear cut answer. A man may be able to follow a gainful occupation, however little that is and still you probably would not be absolutely correct in saying that he could go out and compete in the market, whatever that means to compete. Q. Get a job and hold it? A. There are so many factors in that—the times,—difficulty of getting any kind of a job now, but there are numerous jobs that he could hold if he were able to connect with one that he could hold down. Q. Would you say his statement of what he was doing is about correct as to the limit of his ability to work or to occupy himself? A. Well, of course, we would have to depend on his statement of that to an extent. I have no reason for doubting his word at all. There is no question but the man had a severe injury. On the other hand there may be men as severely hurt or worse that are doing things in the way of gainful occupation, many of them. Q. Can you estimate the disability as saying seventy-five per cent disabled from following the gainful occupation similar to the kind he followed before? A. Well I think thats true—yes, that was probably correct—seventy-five per cent disability from doing any work that he was doing—yes. As a matter of fact, I don't think he could do the work he did before at all. Q. I think you said his condition is fixed and that there is no treatment indicated? A. I believe so. I think he has reached the state where there is not going to be any considerable change. Q. How did you account for the fainting spells of which he complained? A. Well no one can account for them exactly. Probably due to scar tissue forming in the neck near the site of the injury which in certain positions causes compression of the large vessels of the neck although that is more or less theoretical. We cannot say exactly what causes that. We

know that after severe injuries around the neck dizziness is common—a common sequela."

Dr. Randolph, called by the department, testified:

"Q. I believe, Doctor, you stated in your report that you think he can carry on a gainful occupation? A. Yes. Q. Just tell us the nature of that work? A. I think that would have to be largely supervising and business management of his affairs if we admit his contentions that the disability is as great as he claims. Q. Doctor, what do you think was the proper award for his disability? A. We figured that sixty degrees was the proper award or seventy five per cent of the maximum award for total disability."

The evidence shows that claimant owned a farm consisting of one hundred sixty acres, twenty-five or thirty of which were cleared. On the farm he had twelve cows, two horses, two dozen chickens, five hogs, "and a lot of young stuff." At one place in his testimony he says that he must have forty-five head of cattle. He testified that he raised hay on the cultivated land, "outside of a few potatoes and garden." He testified that he was able to do practically none of the work about the farm. His wife and children did all the chores. He showed them how to do things and supervised their work. His oldest son milked the cows. He hired a man to work on the place most of the time. When he did not have a hired man, he fed the cows. The ranch, according to his testimony, did not produce enough to support the family.

Our statute defines "permanent total disability" as follows:

"Permanent total disability means loss of both legs, or arms, of one leg and one arm, total loss of eyesight, paralysis or other condition permanently incapacitating the workman from performing any work at any gainful occupation." Rem. Rev. Stat., § 7679 [P. C. § 3472] (b).

■ The courts have found great difficulty in defining what is meant by incapacity to perform any work at any gainful occupation, and equivalent expressions used in workmen's compensation acts. They agree that they do not mean that the workman must be absolutely helpless or physically broken and wrecked for all purposes except merely to live. *Moore v. Peet Bros. Mfg. Co.*, 99 Kan. 443, 162 Pac. 295; *Sakamoto v. Kemmerer Coal Co.*, 36 Wyo. 325, 255 Pac. 356; *Roller v. Warren*, 98 Vt. 514, 129 Atl. 168; *Green v. Schmahl*, 202 Minn. 254, 278 N. W. 157; *New York Indemnity Co. v. Industrial Commission*, 86 Colo. 364, 281 Pac. 740; *Byouk v. Industrial Commission*, 106 Colo. 430, 105 P. (2d) 1087; *Dierks Lumber & Coal Co. v. Lindley*, 182 Okla. 185, 77 P. (2d) 44.

The purpose of the act is to insure against loss of wage earning capacity. A workman's wage earning capacity may be completely destroyed, though he still has some capacity to perform minor tasks. To quote from the opinion of the supreme court of Minnesota in *Green v. Schmahl*, 202 Minn. 254, 256, 278 N. W. 157:

"Furthermore and important, sporadic competence, occasional, intermittent, and much limited capacity to earn something somehow, does not reduce what is otherwise total to a partial disability. The statutory phrase 'working at an occupation which brings him an income,' like that of insurance 'following any occupation,' implies at least a reasonable degree of continuity of occupational capacity."

The mere fact that the workman owns a small business or a farm from which he is able to derive some income by supervising the work of others or performing minor tasks himself, does not necessarily prove that he has wage earning capacity. To quote the language of the Kansas supreme court in *Moore v. Peet Bros. Mfg. Co.*, 99 Kan. 443, 162 Pac. 295:

"The phrase quoted does not imply an absolute disability to perform any kind of labor. It requires a practical and reasonable interpretation, as is illustrated by the familiar rule that inability to obtain work, caused by an injury, is classed as total incapacity. . . . One who is disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated. . . . The return on any capital he may have, although augmented by his personal attention in looking after the business in which it is invested, clearly is not an element to be considered in the administration of the compensation act. *Nor do we think such consideration should be given to the mere direction of the operation of a business which he owns—its control and management as proprietor.* If it had been shown in this instance that the plaintiff personally performed a part of the work of cleaning, pressing and tailoring, a very different question would be presented. Possibly any portion of his income that could be traceable to such work on his part should be given the same effect as though he received it as wages. But the showing made is merely that he is 'making' a certain sum weekly out of the business which he is 'conducting' as owner, and this might be the case although he were a complete physical wreck." (Italics ours.)

See, also, *Consolidation Coal Co. v. Crislip*, 217 Ky. 371, 289 S. W. 270; *McDonald v. Industrial Commission*, 165 Wis. 372, 162 N. W. 345; *Benson v. Winona Knights of Columbus*, 189 Minn. 622, 250 N. W. 673; *Pryor Coal Mining Co. v. Contino*, 103 Colo. 87, 82 P. (2d) 1101; *Harry Tidd Construction Co. v. Mead*, 163 Okla. 64, 20 P. (2d) 909; *Roller v. Warren, supra; Green v. Schmahl, supra; New York Indemnity Co. v. Industrial Commission, supra; Byouk v. Industrial Commission, supra.* Compare *Perry Coal Co. v. Industrial Commission*, 343 Ill. 525, 175 N. E. 801.

A great many courts have adopted the rule that, if an accident leaves the workman in such a con-

dition that he can no longer follow his previous occupation or any other similar occupation, and is fitted only to perform "odd jobs" or special work, not generally available, the burden is on the department to show that there is special work that he can in fact obtain. To quote the language of the supreme court of Tennessee in *White v. Tennessee Consolidated Coal Co.*, 162 Tenn. 380, 385, 36 S. W. (2d) 902:

"The authorities draw a distinction between cases in which it appears that the injured employe can do light work of a general nature and where he is only fitted to do 'odd' jobs, or special work, not generally available. In the former, the burden is on the petitioner, the presumption being that his inability to obtain employment is due to the fluctuations in the labor market and not to the consequences of the accident. In the latter, the burden is on the employer to show that such special work is available to the petitioner. The rule is admirably stated by Judge Moulton in Cardiff Corp. v. Hall (1911), 1 K. B., 1009, as follows: 'But, on the other hand, I am also of opinion that there are cases in which the onus of showing that suitable work can in fact be obtained does fall upon the employer who claims that the incapacity of the workman is only partial. If the accident has left the workman so injured that he is incapable of becoming an ordinary workman of average capacity in any well-known branch of the labor market,—if, in other words, the capacities for work left to him fit him only for special uses, and do not, so to speak, make his powers of labor a merchantable article in some of the well-known lines of the labor market,—I think it is incumbent on the employer to show that such special employment can, in fact, be obtained by him. If I might be allowed to use such an undignified phrase, I should say that if the accident leaves the workman's labor in the position of an "odd lot" in the labor market, the employer must show that a customer can be found who will take it.'"

See, also, Note, 33 A. L. R. 115; *Ball v. William Hunt & Sons, Ltd.*, (1912) A. C. 496; *Hood v. Wyan-*

*dotte Oil & Fat Co.,* 272 Mich. 190, 261 N. W. 295; *Caillet v. Industrial Commission,* 90 Utah 8, 58 P. (2d) 760; Note, 33 A. L. R. 123.

The construction given to total disability clauses in insurance policies is discussed at length in *Storwick v. Reliance Life Ins. Co.,* 151 Wash. 153, 275 Pac. 550. In that opinion, the court (page 158, Washington Reports) approved and quoted from a Missouri decision (*Foglesong v. Modern Brotherhood of America,* 121 Mo. App. 548, 97 S. W. 240), in which the plaintiff was a farmer who could direct the work to be done on his farm and could perform some light labor himself, but was disabled from carrying on, other than partially, the occupation of a farmer, and equally disabled from carrying on any other gainful occupation. It was held that he was totally disabled. It would seem that the words "total disability," or the equivalent thereof, should receive at least as liberal an interpretation when used in workmen's compensation acts as when used in insurance policies.

Applying these principles, we think there was sufficient evidence in the record to justify submission of the case to the jury, and that the court erred in deciding, as a matter of law, that claimant was not permanently totally disabled.

The judgment appealed from is reversed, and the court below is directed to grant appellant a new trial.

MILLARD, MAIN, BLAKE, and STEINERT, JJ., concur.