



DEC -6 2013

COURT OF A... (... )

# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| THEODORE ERB, | ) | |
| | ) | No. 30796-4-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR & | ) | ORDER AMENDING OPINION |
| INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

IT IS ORDERED the opinion filed December 5, 2013 is amended as follows:

In the first sentence of the last paragraph on page four the word "Bureau" is changed to "Board".

DATED: December 6, 2013

PANEL: Judges Korsmo, Brown, Fearing

FOR THE COURT:

KEVIN M. KORSMO, Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| THEODORE ERB, Sr., | ) | |
| | ) | No. 30796-4-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR & | ) | UNPUBLISHED OPINION |
| INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, C.J. — Theodore Erb suffered the latest in a series of industrial injuries when a 500-pound lift gate fell on his toes, leading to partial amputation of one of them. A jury determined that he was not permanently disabled. Finding no reversible error, we affirm.

FACTS

Mr. Erb went on Social Security Disability in 2004 after suffering for decades from a list of work-related injuries. At that time, some of his preexisting conditions included bilateral carpal tunnel syndrome with releases, low back degenerative disc disease, hypertension, right sacroiliac joint pain, thumb fractures, foot injuries, and post-

traumatic stress disorder. In 2006, Mr. Erb sought to rejoin the workforce through social security's return to work program.

In November of 2006, Postal Express hired Mr. Erb for a full-time light delivery position. Mr. Erb had trained as a commercial truck driver in the 1990s after he was no longer physically capable of continuing his first career as an aircraft assembly line worker. Mr. Erb could only do light delivery driving because of injuries sustained in a 2002 trucking accident. Although Mr. Erb was qualified for the light delivery position, it was questionable whether he was physically capable of the full-time hours that Postal Express needed from him.

Two weeks into his new position, Mr. Erb, 54, was injured when a 500-pound lift gate fell onto his first two left toes. Treatment required partial amputation of Mr. Erb's left great toe up to the first joint. Although Mr. Erb's toes healed well physically he continued to experience hypersensitivity in his toes and pain in the partially amputated toe while walking. The condition often prevented him from sleeping.

Following a few months of recovery, Mr. Erb's treating physician, Dr. Burgdorff, released him from care without any work restrictions. It appears that Mr. Erb asked the doctor to not give him any work restrictions. Mr. Erb then returned to work part-time in early March 2007. Shortly after returning to work, Mr. Erb found the job to be too taxing and thereafter he worked as a relief driver until he was unable to renew his commercial driver's license due to his weight and blood pressure. Afterwards, Mr. Erb worked one

and a half to two hours a day, four days a week, loading trucks for a Postal Express subcontractor. This lasted until the subcontractor laid him off in October 2007.

Mr. Erb was unsuccessful in finding new employment. He sought employment on his own and through programs offered by the Washington State Department of Vocational Rehabilitation.

The Department of Labor and Industries (DLI) closed Mr. Erb's claim in January of 2008 with a permanent partial disability (PPD) rating of five percent of the left lower extremity due to the partial loss of his toe. Mr. Erb challenged the PPD award and sought temporary total disability benefits from the date he was laid off through the date of claim closure and permanent total disability (PTD) benefits from that date forward.

A physical capacities evaluation (PCE) determined that Mr. Erb could stand a maximum of 2-3 hours per day in 30 to 45 minute increments, and could walk one hour per day if limited to 10-15 minute increments. Overall he could alternate between sitting, standing, and walking 6-8 hours at a time in an 8 hour work day.

Dr. Thomas Gritzka testified for Mr. Erb that the walking and standing restrictions were proximately caused by the pain and hypersensitivity from the injury and partial amputation. Dr. Gritzka also observed an abnormal gait that he believed aggravated Mr. Erb's preexisting back condition and was proximately caused by the partial amputation.

Dr. George Sims performed a limited records review and orthopedic examination of Mr. Erb for DLI. Dr. Sims opined that Mr. Erb's numbness in his left foot up to his

3

ankle was unrelated to the amputation and that Mr. Erb's standing and walking restrictions were unrelated to the toe injury. Dr. Sims believed that Mr. Erb could return to his job of injury.

DLI also presented testimony from Scott Whitmer, a certified vocational rehabilitation counselor. He thought that the PCE restrictions did not prevent Mr. Erb from returning to his job of injury. He also opined that Mr. Erb had the training and physical capacity to perform the jobs of counter clerk, room service clerk, toll collector, and routing clerk. Mr. Whitmer, however, did not perform a labor market analysis to determine whether any such positions were available locally.

Maurilio Garza, a certified vocational rehabilitation counselor, testified for Mr. Erb. Mr. Garza believed that Mr. Erb could not return to his job of injury or the light duty relief driver position based on the PCE and Dr. Gritzka's medical opinion. He found that Mr. Erb had no transferrable job skills that qualified him for any position within his physical capacity restrictions. He disputed Mr. Whitmer's opinion that Mr. Erb had the training and physical capacity to perform any sort of clerk duties. Mr. Garza also performed a labor market survey showing that none of the positions for which Mr. Erb was allegedly qualified were available in his locality.

Mr. Erb appealed the PPD determination to the Bureau of Industrial Insurance Appeals (BIIA). An industrial appeals judge (IAJ) issued a proposed decision and order affirming the claim closure order. Mr. Erb then sought review by the BIIA's appointed

4

members. They denied review and adopted the IAJ's proposed decision and order as the final decision of the BIIA.

Mr. Erb then appealed to the Benton County Superior Court; the case went to jury trial in February 2012. The jury was asked to decide whether the BIIA was correct in finding that Mr. Erb was not totally and permanently disabled. In order to decide the question, the court gave the jury instructions informing the jurors of the findings of fact entered by the BIIA. Mr. Erb challenged some of those instructions on the grounds that they prejudicially informed the jury of nonmaterial findings of fact. Mr. Erb also requested an instruction explaining the odd lot doctrine to the jury. The court denied both challenges and submitted the case to the jury. After the jury returned a verdict affirming the BIIA, Mr. Erb timely appealed to this court.

## ANALYSIS

This appeal challenges the failure to give the odd lot instruction, alleges the court should not have given three noted factual instructions, and contends that the verdict was not supported by the evidence. We address those arguments in that order.

*Odd Lot Instruction*

Mr. Erb argues that the court erred in not giving his odd lot instruction. We conclude that the trial court did not abuse its discretion in denying his request.

The instruction at issue is 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 155.07.01 (2012) (WPI):

If, as a result of an [industrial injury] [occupational disease], a worker is able to perform only odd jobs or special work not generally available, then the worker is totally disabled, unless the [Department] [employer] proves by a preponderance of the evidence that odd jobs or special work that he or she can perform is available to the worker on a reasonably continuous basis.

Well settled standards govern our review of this issue. "Refusal to give a particular instruction is an abuse of discretion only if the decision was manifestly unreasonable, or [the court's] discretion was exercised on untenable grounds, or for untenable reasons." *Anfinson v. FedEx Ground Package Sys., Inc.*, 159 Wn. App. 35, 44-45, 244 P.3d 32 (2010) (quotation omitted) *aff'd*, 174 Wn.2d 851, 281 P.3d 289 (2012). "If a party's theory of the case can be argued under the instructions given as a whole, then a trial court's refusal to give a requested instruction is not reversible error." *Id.* at 45. "When the record discloses an error in an instruction given on behalf of the party in whose favor the verdict was returned, the error is presumed to have been prejudicial, and to furnish ground for reversal, unless it affirmatively appears that it was harmless." *Id.* at 44.

An employee has suffered a permanent total disability when a disability or condition results in "permanently incapacitating the worker from performing any work at any gainful occupation." RCW 51.08.160. The "odd lot" doctrine has its beginnings in Washington in *Kuhnle v. Dep't of Labor & Indus.*, 12 Wn.2d 191, 120 P.2d 1003 (1942). There it was noted that "courts have found great difficulty in defining what is meant by

6

incapacity to perform any work at any gainful occupation." *Id.* at 197. Canvassing

authorities applying similar language used in the laws of other states, our court noted:

> A great many courts have adopted the rule that, if an accident leaves the workman in such a condition that he can no longer follow his previous occupation or any other similar occupation, and is fitted only to perform "odd jobs" or special work, not generally available, the burden is on the department to show that there is special work that he can in fact obtain.

*Id.* at 198-99.[1] The court then reversed a summary judgment ruling in favor of DLI and

remanded the case for trial where the evidence showed that the disabled worker could not

return to his former occupation, but the parties disputed whether the supervision of his

own farm amounted to the ability to perform other work. *Id.* at 193, 200.

A subsequent case interpreted the *Kuhnle* language to mean that "the injured

worker need not show that he cannot perform *any* light or sedentary work, but must prove

only that he is incapable of performing light or sedentary work of a *general* nature."

*Spring v. Dep't of Labor & Indus.*, 96 Wn.2d 914, 919, 640 P.2d 1 (1982). The *Kuhnle*

---

[1] This still appears to be the standard approach to the issue. A person's labor is said to become an odd lot when they "are so handicapped that they will not be employed regularly in any well-known branch of the labor market." 4 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 83.02 (2012). "The essence of the test is the probable dependability with which claimant can sell his or her services in a competitive labor market." *Id.* The doctrine places an emphasis on irregular and unpredictable employment as opposed to steady and continuous employment, when taking into account the claimant's education, mental capacity, and the probable income from any future employment. *Id.* at §§ 83.03-83.05.

observation and the interpretation from *Spring* appear to be the original basis for the "odd lot" WPI instruction.[2]

Although the doctrine has long been stated[3] in fairly uniform terms, application to a particular case in the form of a jury instruction has been less uniform or clear. No Washington case mandates use of the instruction upon request. Thus, we must fall back to our general principles. As noted previously, the trial court's discretionary decision to give or to not give a requested instruction constitutes an abuse of discretion only when prejudice is established. In other words: did the court's refusal to give the instruction likely mislead the jury or prevent Mr. Erb from arguing his theory of the case? *Anfinson*, 159 Wn. App. at 45. We think the answer is "no" under the facts of this case.

The State argues that no prejudice can ever befall a claimant when a court refuses an odd lot instruction because the odd lot doctrine is just "an additional way for a worker to lose." *Graham v. Weyerhaeuser Co.*, 71 Wn. App. 55, 68, 856 P.2d 717 (1993), *overruled on other grounds by Leeper v. Dep't of Labor & Indus.*, 123 Wn.2d 803, 872 P.2d 507. We disagree. This quotation from *Graham* presents an incorrect characterization because the odd lot doctrine creates a presumption of permanent total

---

[2] *But see Allen v. Dep't of Labor & Indus.*, 16 Wn. App. 692, 559 P.2d 572 (1977).

[3] One nice summary of the practical effect of the doctrine comes from Wyoming: "Under the odd lot doctrine, a claimant who is not actually permanently totally disabled is able to receive permanent total disability benefits because the claimant's disability and other factors make the claimant de facto unemployable." *Moss v. Workers' Safety and Comp. Div.*, 232 P.3d 1, 5 (Wyo. 2010).

disability where the defendant would not otherwise be considered disabled. It recognizes that a worker who is not *de facto* permanently and totally disabled can be considered such by operation of the law, but like any true presumption it also gives the employer the opportunity to rebut it with contrary evidence. *Graham* also ignores the fact that our courts, including the Washington State Supreme Court, have twice found reversible error from a trial court's refusal to instruct the jury on the odd lot when requested by the worker. *Spring*, 96 Wn.2d at 919-20; *Wendt v. Dep't of Labor & Indus.*, 18 Wn. App. 674, 680-81, 571 P.2d 229 (1977).

Although *Graham* is inapposite, we still affirm because Mr. Erb has failed to carry his burden of proving likely prejudice. The court's instructions still allowed Mr. Erb to argue that he was not able to return to his job of injury and that he was not qualified physically or intellectually for any of the other jobs that the Department believed him qualified to perform.

The only way in which Mr. Erb could have been prejudiced is if any of the alternative jobs presented by Mr. Whitmer were odd lot jobs. *See Wendt*, 18 Wn. App. at 680-81. If any of those had been odd lot jobs then the instruction would have been necessary to prevent the jury from believing that Mr. Erb had the burden of proving that he could not perform or obtain those jobs with a reasonable degree of success and continuity. However, that was not the testimony. The record reflects that the alternative jobs proposed by Mr. Whitmer were all full-time jobs of a general nature, not special

9

work. None of the experts presented testimony, nor did counsel argue, that Mr. Erb could perform only work of a special limited nature. None of the proposed jobs were odd lot jobs and, thus, there was no need to instruct the jury on that doctrine.

Accordingly, Mr. Erb did have the burden as a matter of law of proving that he could not perform or obtain light sedentary work with a reasonable degree of success and continuity. An odd lot instruction is not required where none of the jobs at issue are alleged to be odd lot jobs. The trial court did not abuse its discretion by declining the proposed instruction.

*Factual Finding Instructions*

Mr. Erb challenges three findings of fact that were submitted to the jury. While two of his claims have merit, the error in giving those instructions was not prejudicial.

In appeals of workers' compensation cases, the trial court is required to instruct the jury "of the exact findings of the [BIIA] on each material issue before the court." RCW 51.52.115. "Only findings of ultimate facts should be permitted, not evidentiary or argumentative findings." *Jenkins v. Dep't of Labor & Indus.*, 85 Wn. App. 7, 11, 931 P.2d 907 (1996). Examples of findings of ultimate facts include:

> a finding on the identity of the claimant and his employer, the claimant's status as an employee or dependent under the act, the nature of the accident, the nature of the injury or occupational disease, the nature and extent of disability, the causal relationship between the injury or the disease and the disability, and other ultimate facts upon the existence or nonexistence of which the outcome of the litigation depends. The dividing line between

> evidentiary or argumentative (subordinate) and ultimate findings of fact
> cannot be readily stated.

*Gaines v. Dep't of Labor & Indus.*, 1 Wn. App. 547, 552, 463 P.2d 269 (1969). Here,

Mr. Erb argues that he was prejudiced by instructions that informed the jury on

nonmaterial findings entered by the BIIA. We disagree.

Mr. Erb's first instructional challenge involves instructing the jury on the hours

that Mr. Erb had expected to work when he started at Postal Express. We agree that this

fact was wholly irrelevant and thus unnecessary. How much a person expects to work

has no bearing on deciding the worker's benefits rate or whether they are physically

capable of performing the job. However, the only way that it could have prejudiced Mr.

Erb is if it somehow negatively impacted his credibility. We do not see how this fact

impacts his credibility in any way.

Mr. Erb next argues that the court erred by instructing the jury of the BIIA's

finding that his rate of pay was not provided. This finding is demonstrably false. *See*

Certified Appeal Board Record at 31. It is also a finding that should not have been given

because it too was wholly irrelevant to any of the issues before the jury. Again, an

irrelevant finding can only have been prejudicial if it negatively impacted Mr. Erb's case.

Mr. Erb argues that the finding reflects negatively on him because it suggests that he

stalled or failed to cooperate with the Department during his claim process. The finding,

however, was written in neutral language and says nothing about any wrongdoing by any

11

party. Accordingly, we do not see how the jury could have drawn a negative inference from this fact.

Finally, Mr. Erb argues that the court should not have instructed the jury on the BIIA's findings with regards to certain collateral reasons why Mr. Erb did not return to his job of injury and why he stopped working as a relief driver. He argues that those facts, although true, were immaterial. We disagree because having a comprehensive understanding of all the reasons why Mr. Erb did not return to his job of injury or the relief driver position are important to determining "the nature and extent of disability" under *Gaines*. Although the finding was not favorable to Mr. Erb, its favorability for one side or the other does not make it any less relevant to the proper determination of the extent of Mr. Erb's disability. Because the unfavorable finding was material to the case, the court did not err by informing the jury of this particular finding.

The two erroneously submitted instructions did not prejudice Mr. Erb. Thus, this challenge is without merit.

*Sufficiency of the Evidence*

Mr. Erb also argues that the evidence did not support the jury's decision. Properly viewed, the evidence was sufficient.

RCW 51.52.115 provides that a workers' compensation claim in superior court is heard de novo, the court is limited to the evidence presented to the BIIA, the findings and decision of the BIIA are prima facie correct, and the party attacking them bears the

12

burden of proof. RCW 51.52.115. When appealed to this court, the appeal "shall lie from the judgment of the superior court as in other civil cases." RCW 51.52.140. As with any other civil appeal, our review is limited to determining whether the "evidence is sufficient to persuade a fair-minded, rational person of the truth of the declared premise." *Price v. Kitsap Transit*, 125 Wn.2d 456, 464, 886 P.2d 556 (1994).

Based on the evidence presented to the BIIA, this court cannot say that the jury lacked sufficient evidence to persuade a fair-minded person that Mr. Erb was not left permanently and totally disabled by his job of injury.

The thrust of Mr. Erb's argument is that a rational person could not find the DLI witnesses persuasive because they did not perform as thorough examinations as Dr. Gritzka and Mr. Garza. While Mr. Erb's witnesses unquestionably performed more thorough and comprehensive analyses of Mr. Erb's qualifications and physical abilities than DLI's witnesses, those facts pertain to what weight and credibility to assign the evidence. Even though this court may be persuaded by that evidence, it is not our function here to substitute our judgment for that of the trier of fact. *Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 124, 615 P.2d 1279 (1980).

Here, the jury was given evidence from competent medical and vocational professionals stating that Mr. Erb could return to his job of injury. The jury apparently believed this evidence. Alternatively, the jury could have believed Mr. Erb to be permanently and totally disabled, but disagreed as to the question of proximate causation.

13

No. 30796-4-III
*Erb v. Dep't of Labor & Indus.*

The DLI witnesses supported either conclusion. Accordingly, the jury had sufficient evidence from which to affirm the BIIA's decision.

For the noted reasons, we affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C. J.

WE CONCUR:

_____            _____
Brown, J.                                                    Fearing, J.

14